IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **iGAMES ENTERTAINMENT, INC.**, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 04-180-KAJ |
| **CHEX SERVICES, INC.** and **EQUITEX, INC.**, | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF iGAMES ENTERTAINMENT, INC.'S MOTION TO PRECLUDE, IN PART, THE TESTIMONY OF DEFENDANTS' PROPOSED EXPERT, JOHN THOMAS SHOPA**

DATED:    March 15, 2005

**OF COUNSEL:**
**DUANE MORRIS LLP**
Matthew A. Taylor, Esquire
James L. Beausoleil, Jr., Esquire
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
215.979.1000

**DUANE MORRIS LLP**
Thomas P. McGonigle (Del. I.D. No. 3162)
Matt Neiderman (Del. I.D. No. 4018)
1100 North Market Street, 12th Floor
Wilmington, Delaware  19801
302.657.4900

Attorneys for Plaintiff
iGames Entertainment, Inc.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

STATEMENT OF FACTS .........................................................................................................2

I.      The Term Loan Note...........................................................................................2

II.     Defendants' Purported Termination Of The Term Loan Note ...........................3

III.    The Termination Dispute ....................................................................................3

IV.    Shopa's Second Conclusion................................................................................4

ARGUMENT ..............................................................................................................................5

I.      THE STANDARD FOR EXPERT TESTIMONY .............................................5

II.     SHOPA'S OPINION TESTIMONY IS INADMISSIBLE UNDER RULE 702 .................5

CONCLUSION...........................................................................................................................9

i

**TABLE OF AUTHORITIES**

| **FEDERAL CASES** | **PAGE** |
|---|---|

*CMI-Trading, Inc. v. Quantum Air., Inc.*,
    98 F.3d 887 (6th Cir. 1996) ..................................................................................5, 6, 7, 8

*Delta Mining Corp. v. Big Rivers Elec. Corp.*,
    18 F.3d 1398 (7th Cir. 1994) ...........................................................................................5

*F.H. Krear & Co. v. Nineteen Named Trustees*,
    810 F.2d 1250 (2d Cir. 1987)...........................................................................................7

*Landmark Builders, Inc. v. Cottages of Anderson, LP*,
    2003 U.S. Dist. LEXIS 11204 (S.D. Ind. May 20, 2003)...............................................5, 7

*Loeb v. Hammond*,
    407 F.2d 779 (7th Cir. 1969) ...........................................................................................5

*Marx & Co. v. Diners' Club, Inc.*,
    550 F.2d 505 (2d Cir.)
    *cert. denied*, 434 U.S. 861 (1977)................................................................................5, 6

*Scopia Mortgage Corp. v. Greentree Mortgage Co.*,
    184 F.R.D. 526 (D.N.J. 1998)..........................................................................................5

*United States v. Gregory Park, Section II, Inc.*,
    373 F.Supp. 317 (D.N.J. 1974) .......................................................................................7

*United States ex rel. Crompton v. Midwest Specialties, Inc.*,
    142 F.3d 296 (6th Cir. 1998) ...........................................................................................5

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants have tendered the expert report of John Thomas Shopa ("Shopa"). Defendants propose that Shopa, an accountant, will testify that iGames on March 12, 2004 was in default of its obligations under the Term Loan Note (the "Note"). The parties' respective rights and obligations under the Note are, however, very much in dispute in this matter, and such expert testimony -- purporting to interpret for the jury and the Court the meaning and legal effect of the terms of the Note -- is inadmissible under Fed. R. Evid. 702. Accordingly, Shopa's testimony should be precluded to the extent he proposes to testify that iGames was in default of its obligations under the Note.

**STATEMENT OF FACTS**

**I.    The Term Loan Note**

iGames and defendant Chex Services, Inc. ("Chex") entered into the Note dated January 6, 2004.[1]  A true and correct copy of the Term Loan Note is attached hereto as Exhibit "A."

Under the Note, Chex agreed to loan to iGames $4 million, which iGames intended to use to fund its acquisition of Available Money, Inc. ("Available Money").  Chex was required to make the payments to iGames in two installments, each of $2,000,000, the second installment to be made sixty days after the first payment.  Chex paid the first installment on January 6, 2004, and accordingly, Chex was obligated by March 6, 2004 to pay to iGames the second installment.[2]

The Note contained an "Interest" provision, which provided, in pertinent part, as follows:

> Interest.  For the period ending February 1, 2004, the borrower shall pay to the Lender interest on the outstanding Term Loans at the rate of fifteen percent (15%) per annum, calculated on the basis of a 360-day year and counting the actual number of days elapsed. In addition, in lieu of interest, the Borrower shall, on a monthly basis, pay to the Lender an amount equal to 50% of the Operating Income of the Borrower's Available Money, Inc. subsidiary ("Available Money") (which for the period ending February 1, 2004 shall be reduced by the amount of interest paid under the previous sentence) . . .

---

[1]    Although Chex, on or about January 6, 2004, wired to a third party (*i.e.*, the owner(s) of Available Money, Inc.) the initial advance under the Note, Defendants' principals were not available to complete the paperwork on the loan and thus no documents were executed on January 6, 2004.  (Deposition of Ijaz Anwar, at 36:17-37:6 (Exhibit "D")).  Thereafter, on January 21, 2004, iGames executed the Note in favor of Chex, but dated the Note January 6, 2004, as per agreement of the parties.

[2]    According to the terms of the Note, Chex had twenty-one days after January 6, 2004 to obtain a binding commitment for financing sufficient to fund the second $2,000,000 installment. In fact, however, Chex never made adequate efforts to obtain funding of the second installment, and did not pay the second installment as required under the Term Loan Note.

(Note, at 1). Importantly, this "Interest" provision does not specify any date certain for iGames to pay interest to Defendants and, in fact, allows iGames to make payment equal to 50% of Available Money's "Operating Income" (as defined in the Note) <u>in lieu of</u> any interest payment.

II.     **Defendants' Purported Termination Of The Term Loan Note**

At the close of business on Friday, March 12, 2004, after defaulting on their obligation to pay to iGames the second principal installment under the Note, Defendants faxed to iGames a letter notifying iGames, for the first time, that Defendants believed that iGames was purportedly in default of its obligations under the Note. According to Defendants, iGames was in default of its obligations under the Note for: "(i) failing to pay interest or 50% of the operating income of Available Money, Inc. on <u>or</u> before February 1, 2004, (ii) failure to pay the ten percent (10%) of such overdue amount, and (iii) failure to deliver the stock pledge agreement required under the terms of the Term Loan Note." (*See* Letter of March 12, 2004, attached as Exhibit "B" (emphasis added)). Notwithstanding the fact that this was the first notification to iGames of such alleged default, Defendants in their letter also purported—without allowing iGames to cure the alleged "defaults" -- to immediately terminate the SPA. iGames submits that Defendants' purported termination of the SPA was pretextual, and intended solely to "clear the way" for Defendants to complete a deal they had secretly been working on for several weeks to sell Chex to a third party instead of to iGames. (*See* Brief in Support of Motion by iGames Entertainment, Inc. for Summary Judgment Against Chex Services, Inc. and Equitex, Inc., filed March 15, 2005).

III.    **The Termination Dispute**

The parties disagree whether Defendants properly terminated the SPA due to iGames' alleged breach of its obligation to pay interest under the Note. Central to this dispute is the issue of whether, when, and how iGames was obligated to make interest payments under the Note.

3

iGames contends that, per the plain language of the Note, no payment of interest was due at the time Chex announced its decision to declare iGames in "default" of the Note. Indeed, the Note on its face does not contain a due date for any payments. Further, iGames was entitled to avail itself of an alternative payment method, under which no payment could have been due, since the requisite financial information upon which the payments were to be calculated had not yet been provided to iGames, nor analyzed by its accountants. Finally, in addition to the above, Chex and iGames entered into a subsequent oral agreement that postponed payments by iGames until after a final accounting could be completed with respect to moneys owed by Chex to iGames for certain trade show expenses.

## IV.     Shopa's Second Conclusion

Despite the parties' dispute over the contractual basis for Defendants' purported termination of the SPA, Shopa, as his second conclusion, proposes to testify that Equitex and Chex properly terminated the SPA on March 12, 2004. In his report, Shop states that:

> I also conclude that iGames was not in compliance with the provisions of the Term Loan Note, which constituted an Event of Default as of March 12, 2004 when the Stock Purchase Agreement was terminated by Equitex and Chex Services.

(Shopa Expert Report, at 23 (Exhibit "C")). Thus, even though the parties' dispute the nature of iGames' obligations under the Note's "Interest" provision, Shopa proposes to proffer the conclusion to the jury that iGames was obligated, prior to March 12, 2004 (*i.e.*, when Equitex and Chex purported to terminate the SPA) to pay interest to Equitex and Chex. According to Shopa, "iGames owed Chex Services $45,000 of interest payments per the Term Loan Note as of March 11, 2004." (*Id.* at 23).

# ARGUMENT

## I. THE STANDARD FOR EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible only if such testimony consists of "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Under this standard, expert testimony is not admissible "[a]bsent any need to clarify or define terms of art, science, or trade." *Delta Mining Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398, 1402 (7th Cir. 1994).

Under Rule 702, a proposed expert generally cannot testify as to an interpretation of the meaning or legal effect of a disputed contract. *See Landmark Builders, Inc. v. Cottages of Anderson, LP*, 2003 U.S. Dist. LEXIS 11204 at *7 (S.D. Ind. May 20, 2003) (citing, e.g., *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir.), *cert. denied*, 434 U.S. 861 (1977)); *Scopia Mortgage Corp. v. Greentree Mortgage Co.*, 184 F.R.D. 526, 531 (D.N.J. 1998); *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996). This follows because "[t]he question of interpretation of the contract is for the jury and the question of legal effect is for the judge." *Landmark Builders, Inc.*, 2003 U.S. Dist. LEXIS 11204 at *7-8 (quoting *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969). Thus, "experts may not testify as to the legal effect of a contract." *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 301-02 (6th Cir. 1998) (citing *CMI-Trading*, 98 F.3d at 890).

## II. SHOPA'S OPINION TESTIMONY IS INADMISSIBLE UNDER RULE 702

Shopa cannot testify that iGames on March 12, 2004 was in default of its alleged obligations under the Note. Shopa's conclusion in this regard is nothing more than his interpretation of the meaning and legal effect of the Note's "Interest" and "Event of Default" provisions. It is the role of the Court to determine the legal effect of these provisions and the

5

jury must determine the provisions' meanings. Thus, Shopa's proposed testimony that Defendants on March 12, 2004 properly terminated the Note usurps the roles of the Court and jury and is inadmissible under Rule 702.

Shopa's conclusion that Chex on March 12, 2004 properly terminated the Note is based on nothing more than Shopa's incorrect reading of the Note. Shopa, like his clients and their lawyers, interprets the Note to provide: 1) that iGames prior to March 12, 2004 was required to pay interest to Chex; (2) that iGames' failure to pay such interest prior to March 12, 2004 was an "Event of Default"; and, (3) that upon occurrence of this alleged "Event of Default," Equitex and Chex were entitled immediately to terminate the SPA. Importantly, each element of Shopa's interpretation of the Note is contested. First, iGames contends that the Note does not mandate that iGames was obligated to pay interest prior to March 12, 2004 (or for that matter on any other date certain). Not only does the Note fail on its face to impose any such obligation, but it would have been impossible for iGames to have paid to Defendants 50% of Available Money's operating income, because iGames did not have necessary financial information it needed to make such a calculation. Moreover, even if an obligation to pay interest was determinable, there was a subsequent oral agreement between the parties that extended the period for iGames to pay such interest. Second, iGames contends that even a failure to pay interest on the due date is not an "Event of Default" until ten days after the payment-due date. Finally, iGames contends that even if there was an "Event of Default," it could not give rise to a right of termination until after Chex had provided to iGames notice of the "Event of Default" and a reasonable opportunity to cure.

It is well-settled under Rule 702 that the kind of interpretive, conclusory testimony, which Shopa proposes to offer by his conclusion that iGames was, on March 12, 2004, in default

6

of the Note, is inadmissible. *See CMI-Trading*, 98 F.3d at 890; *Marx & Co.*, 550 F.2d at 509-10; *Landmark Builders*, 2003 U.S. Dist. LEXIS 11204 at *7. For example, the Second Circuit in *CMI-Trading* explained that the defendants' expert financial consultant was properly precluded from testifying, based on his review of, inter alia, a promissory note and letter agreement, as to whether the transaction in question was a "loan" or a "joint venture":

> We conclude that the opinion that Bigelow would have offered was not properly the subject of "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. . . . The legal concepts of "loan" and "joint venture" are issues of law and are within the sole competence of the court; "experts" may not testify as to the legal effect of a contract. Thus, Bigelow's proposed expert testimony was properly excluded.

*CMI-Trading*, 98 F.3d 887; *see also F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987) (holding that the trial court did not err in excluding the testimony of an attorney as an expert witness in a contract dispute that the contracts at issue were unenforceable because they lacked essential terms). Similarly, in *United States v. Gregory Park, Section II, Inc.*, 373 F. Supp. 317 (D.N.J. 1974), the court, in barring the defendant's expert accountant from testifying that the defendant, by advancing payments to the defendant's affiliates, did not breach a contractual provision prohibiting such advances unless made from "excess" funds, explained that:

> At trial defendant labored to establish a special meaning for the words "excess funds" as they appear in paragraph 4 of the workout agreement. Sought was Mr. Padula's interpretation of these words, as a party to the agreement, as well as that of defendant's accountant, as an expert. Since defendant did not establish that these words, as used by the parties, were given a specialized usage requiring expert aid to determine their meaning, and since the accountant did not purport to render an accounting interpretation of these words, but only offered his own interpretation, resting upon their context within the agreement, I barred his testimony.

*Id*. at 333 (citations omitted).

In this case, as in *CMI-Trading* and *Gregory Park* (and numerous other decisions), defendants' proposed expert testimony as to the meaning and effect of contract provisions is inadmissible.  As in *CMI-Trading*, Shopa's proposed testimony, that iGames on March 12, 2004 was in default of its obligations under the Note on March 12, 2004, is properly excluded as improper testimony as to the meaning and legal effect of the Note.  Further, as in *Gregory Park*, defendants do not propose through Shopa's testimony to prove any specialized usage of terms in the Note, but rather, seek merely to have Shopa offer his interpretation that Chex on March 12, 2004 properly terminated the SPA.  Such testimony is inadmissible under Rule 702.

## **CONCLUSION**

For all of the foregoing reasons, plaintiff iGames Entertainment, Inc., respectfully requests that the Court preclude defendants' proffered expert witness, Thomas John Shopa, from testifying on legal and other related matters that are for the jury or the Court to decide, and in particular, barring him from testifying that iGames on March 12, 2004 was in default of its obligations under the Note, as set forth in the second "conclusion" in Shopa's report dated January 26, 2005.

DATED:     March 15, 2005                          **DUANE MORRIS LLP**


                                                                /s/ Thomas P. McGonigle
                                                                Thomas P. McGonigle (Del. I.D. No. 3162)
                                                                Matt Neiderman (Del. I.D. No. 4018)
                                                                1100 North Market Street, 12th Floor
**OF COUNSEL:**                                                  Wilmington, Delaware  19801
                                                                302.657.4900
**DUANE MORRIS LLP**
Matthew A. Taylor, Esquire
James L. Beausoleil, Jr., Esquire
One Liberty Place
Philadelphia, Pennsylvania 19103-7396                            Attorneys for Plaintiff
215.979.1000                                                     iGames Entertainment, Inc.


WLM\206409.1