THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| iGames Entertainment, Inc., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Chex Services, Inc. and Equitex, Inc. )<br>)<br>Defendants. )<br>) | C.A. No. 04-180-KAJ |

**BRIEF OF CHEX SERVICES, INC. AND EQUITEX, INC.
IN OPPOSITION TO iGAMES ENTERTAINMENT, INC.'S MOTION TO
PRECLUDE, IN PART, THE TESTIMONY OF DEFENDANTS'
PROPOSED EXPERT, THOMAS JOHN SHOPA**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

James W. Semple (#396)
James E. Drnec (#3789)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800
Email: *jdrnec@morrisjames.com*
Attorneys for Chex Services, Inc.
and Equitex, Inc.

OF COUNSEL:

RIDER BENNETT, LLP

Daniel Q. Poretti
Patrick D. Robben
Douglas J. Frederick
33 South Sixth Street, Suite 4900
Minneapolis, MN 55402
(612) 340-8900
Email: *dqporetti@rider.com*

Dated: March 28, 2005

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF THE FACTS ................................................................................. 2

ARGUMENT ................................................................................................................ 7

    I.    STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY ......... 7

    II.    MR. SHOPA'S TESTIMONY IS ADMISSIBLE ....................................... 7

CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Buford v. Wilmington Trust Co.*,
    841 F.2d 51 (3d Cir. 1988) ............................................................................................. 7, 8

*Chemipal, Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
    350 F. Supp. 2d 582 (D. Del. 2004) .................................................................................... 7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................... 9

*Delta Mining Corp. v. Big Rivers Elec. Corp.*,
    18 F.3d 1398 (7th Cir. 1994) .............................................................................................. 8

*Landmark Builders, Inc. v. Cottages of Anderson, L.P.*,
    IP 01-C-1592-C-M/S, 2003 WL 21508118 (S.D. Ind. May 20, 2003) .............................. 8

*Nebraska Depository Inst. Guaranty Corp. v. Stastny*,
    497 N.W.2d 657 (Neb. 1993) ............................................................................................. 8

*United States v. Gregory Park, Section II, Inc.*,
    373 F.Supp. 317 (D.N.J. 1974) .......................................................................................... 8

**STATUTES**

Federal Rule of Civil Procedure 26(a)(2)(B) ........................................................................... 9

Federal Rule of Evidence 702 .................................................................................................. 7

## **SUMMARY OF ARGUMENT**

iGames Entertainment, Inc. has filed a motion to preclude, in part, the testimony of Thomas John Shopa, CPA, CFP, an expert witness for Chex Services, Inc. and Equitex, Inc. In its motion papers iGames fails to address binding Third Circuit law that is directly contrary to its position. Once viewed in light of the applicable law, iGames itself has defeated its own argument to exclude Mr. Shopa's testimony.

The specialized knowledge of Mr. Shopa, who is familiar with the accounting aspects of interest payment obligations and profit sharing obligations will assist the trier of fact to understand the evidence and to determine the precise factual issue which iGames contends is at the heart of this case.

Further, iGames' arguments go to the weight of Mr. Shopa's testimony and not to its admissibility. This is a case where cross-examination, contrary evidence, and careful instruction on the burden of proof are the appropriate means for iGames to attack Mr. Shopa's opinion. Therefore, Mr. Shopa's testimony is admissible and iGames' motion should be denied.

## STATEMENT OF THE FACTS[1]

iGames Entertainment, Inc. ("iGames") initiated this action in this Court on March 24, 2004, alleging, among other things, that Chex Services, Inc. ("Chex") had breached the terms of a Term Loan Note ("Note") that was executed by iGames in favor of Chex. The Note is the subject of litigation that was initiated by Chex in Minnesota[2] wherein Chex seeks to recover the principal amount plus accrued interest and applicable late fees associated with a $2 million loan that iGames has refused to repay. The Minnesota action was transferred to this Court and was consolidated with this action.

In August of 2004, before the actions were consolidated, Chex moved for summary judgment on its claim that iGames breached the Note. (*See* C.A. No. 04-CV-0885 D.I. 39.) On October 1, 2004, after the actions were consolidated, iGames filed its brief in opposition to Chex's motion for summary judgment. (*See* C.A. No. 04-CV-180 D.I. 49.) In that brief, iGames argued that the Note's provision regarding "Interest" is ambiguous with respect to how interest was to be calculated and when interest payments were due. (*See Id.* at 16.) Specifically, iGames' representations to this Court included the following: "In this case, the Note does not provide a payment due date and provides an alternative method of payment that raises significant factual issues concerning the timing and amount of the payments." (*Id.* at 16.)

On October 13, 2004, Chex filed its reply brief in support of its motion for summary judgment. (*See* C.A. No. 04-CV-180 D.I. 51.) In its reply brief, Chex argued

---

[1] The facts of this case have been presented to this Court in previously filed motions. Only those facts relevant to the Motion at issue will be addressed herein.

[2] Chex brought the action in Minnesota because the Note contained a forum-selection clause dictating that all disputes arising out of the Note would be brought in the appropriate courts of the State of Minnesota.

2

that the Note's "Interest" provision clearly required iGames to make certain interest payments on or before certain dates. (*See id.* at 5.) On November 12, 2004, during the hearing on Chex's prior motion, this Court found that there were "material issues of fact with respect to a subsequent oral modification and material issues of fact with respect to how interest was to be calculated. [iGames] raised enough of a scent of factual dispute on those points to convince [the Court] . . . ." (*See* C.A. No. 04-CV-180 D.I. 63 at 27 (Hearing Transcript).)

Although Chex has consistently taken the position that the Note unambiguously required iGames to make clearly defined interest payments on clearly defined dates, in the event that this Court would agree with iGames' arguments that the language of the Note is unclear and ambiguous, Chex sought the expertise of a Certified Public Accountant and Certified Financial Planner to offer an opinion regarding the financial obligations of iGames under the Note.

On January 26, 2005, the parties exchanged initial expert reports. Chex and Equitex, Inc. ("Equitex") submitted an expert report by Thomas John Shopa, CPA, CFP. (*See* C.A. No. 04-CV-180 D.I. 104 Ex. F (Drnec Aff.[3] Ex. F).) As Mr. Shopa states, he was asked, among other things, to "consider the financial and other obligations of iGames in conjunction with a Term Loan Note resulting from a $2 million loan from Chex Services to iGames in January 2004." (*See id.* Ex. F at 1.)

Based on Mr. Shopa's experience and expertise in the financial and accounting industries, Mr. Shopa determined that the terms of the Note required iGames to make

---

[3] References to the "Drnec Aff." refer to the Affidavit of James E. Drnec, Esquire in Support of Chex Services, Inc.'s and Equitex, Inc.'s Motion to Exclude Expert Testimony previously submitted in this matter. (C.A. No. 04-CV-180 D.I.102.)

3

interest payments on specific dates as well as profit sharing payments due when the information regarding those profit sharing obligations became available. (*See id.* Ex. F at 5.) In doing so, Mr. Shopa specifically analyzed the following language of the Note's "Interest" provision:

> For the period ending February 1, 2004, the borrower shall pay to the Lender interest on the outstanding Term Loans at the rate of fifteen percent (15%) per annum, calculated on the basis of a 360-day year and counting the actual number of days elapsed.
>
> * * *
>
> In addition, in lieu of interest, the Borrower shall, on a monthly basis, pay to the Lender an amount equal to 50% of the Operating Income of the Borrower's Available Money, Inc. subsidiary ("Available Money") (which for the period ending February 1, 2004 shall be reduced by the amount of interest paid under the previous sentence) . . . .

(*See id.* Ex. F at 5.) This language of the Note is the very same language that iGames argued is ambiguous while opposing Chex's prior summary judgment motion. (*See* C.A. No. 04-CV-180 D.I. 62 at 15-16 (iGames' prior Brief in Opposition to Summary Judgment).)

Based on Mr. Shopa's financial expertise, he immediately recognized the financial obligations that the Note created. He stated:

> This arrangement is similar in nature to a lease, which calls for a fixed monthly rent payment and the payment of additional "percentage rent" typically based upon sales revenue. In such instances, the monthly rent is payable on the first day of the month with payment of the additional "percentage rent" due as soon as the information to calculate the percentage rent becomes available.

(C.A. No. 04-CV-180 D.I. 104 (Drnec Aff. Ex. F at 5)).) Thus, after Mr. Shopa analyzed several other aspects related to the financial obligations of iGames under the Note, Mr. Shopa stated:

> Our analysis indicates that iGames was obligated to pay $20,833 and $24,167 of accrued interest to Chex Services as of February 1, 2004 and March 1, 2004. The 10-day grace period for these payments would be February 11 and March 11, 2004, but no payments were received. Consequently, overdue accrued interest totaled $45,000 as of March 11, 2004.

(*Id.* Ex. F. at 7.) Because these financial obligations exist, Mr. Shopa provided further analysis regarding these financial obligations of iGames. Mr. Shopa stated:

> The Term Loan Note indicates that the failure of iGames to "pay any installment of principal or interest of fee payable hereunder or any obligation within 10 days following the date when due" constitutes an "Event of Default".
>
> We have been informed by counsel that iGames did not make any payment on the Term Loan Note since inception. This is clearly an "Event of Default" as defined by the agreement.
>
> * * *
>
> I also conclude that iGames was not in compliance with the provisions of the Term Loan Note, which constituted an Event of Default as of March 12, 2004 when the Stock Purchase Agreement was terminated by Equitex and Chex Services. iGames owed Chex Services $45,000 of interest payment per the Term Loan Note as of March 11, 2004 (including a 10 day grace period).

(*Id.* Ex. F. at 7, 23.)

iGames filed a motion and brief[4] to preclude, in part, the testimony of Mr. Shopa. (*See* C.A. No. 04-CV-180 D.I. 99-100 (iGames' Br.).) iGames is attempting to preclude a

---

[4] iGames' brief contains numerous inaccuracies and misrepresentations, many of which have nothing to do with the issue of admissibility of Mr. Shopa's testimony.

5

very small portion of Mr. Shopa's testimony, by merely "barring him from testifying that iGames on March 12, 2004 was in default of its obligations under the Note." (*Id.* D.I. 100 at 9.)

On one hand, iGames argues it was not in default of its obligations under the Note because the plain language of the Note did not obligate iGames to make any interest payments before March 12, 2004. (*Id.* at 4.) On the other hand, iGames argues that it was not in default because the due dates for the interest payments were postponed by an alleged oral agreement. (*Id.*) Interestingly, iGames never explains why the parties purportedly entered into the alleged oral agreement to postpone the due dates for interest payments if the plain language of the Note did not obligate iGames to make any interest payments in the first place. Indeed, iGames positions are contradictory. There would be no need to enter an "oral agreement that postponed payments" if no payments were due. iGames' curious and contradictory positions suggest that iGames understood that the Note required payments of interest before March 12, 2004, and that iGames merely invented the imaginary oral agreement[5] in an attempt to withstand Chex's prior summary judgment motion.

Importantly, iGames states that "[c]entral to this dispute is the issue of whether, when, and how iGames was obligated to make interest payments under the Note." (*Id.* at 3.) Thus, Mr. Shopa's testimony directly addresses those factual issues that iGames considers the central issues in this case.

---

iGames' misrepresentations have been sufficiently addressed in Chex and Equitex's prior submissions to this Court and need not be addressed again in relation to this motion.

[5] It should be noted that the alleged oral agreement is sharply disputed. Chex has consistently argued that there was no oral agreement to postpone interest payments due under the Note.

6

## ARGUMENT

### I. STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

"Motions to exclude evidence are committed to the court's discretion." *Chemipal, Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 587 (D. Del. 2004). Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under applicable Third Circuit precedent,[6] when a contract term is not defined in the parties' contract and the parties dispute the intended meaning of the term, an expert witness may properly testify as to the expert's interpretation of the contract language. *See Buford v. Wilmington Trust Co.*, 841 F.2d 51, 55 (3d Cir. 1988).

### II. MR. SHOPA'S TESTIMONY IS ADMISSIBLE

In this case, iGames itself argues that "the Note on its face does not contain a due date for any payments" and that the parties "dispute the nature of iGames' obligations under the Note's 'Interest' provision . . . ." (*See* C.A. No. 04-CV-180 D.I. 100 at 4 (iGames' Br.).) Thus, applying the applicable law to the scenario that iGames itself sets forth demonstrates that an expert witness may properly testify as to the expert's

---

[6] In its opening brief, iGames never cites any authority from the Third Circuit Court of Appeals or from the District of Delaware. Apparently when conducting research for its motion, iGames somehow overlooked the binding precedent that is directly contrary to iGames' argument, namely the Third Circuit's decision in *Buford v. Wilmington Trust Co.*, 841 F.2d 51, 55 (3d Cir. 1988).

7

interpretation of the Note. *See Buford*, 841 F.2d at 55; *see also Nebraska Depository Inst. Guaranty Corp. v. Stastny*, 497 N.W.2d 657, 668-70 (Neb. 1993) (following the *Buford* decision and finding that an accountant's expert testimony regarding contractual language as well as lay witnesses' testimony regarding the same contractual language was admissible). Therefore, if one accepts iGames' stated scenario, then Mr. Shopa's testimony is admissible and iGames' motion should be denied.

As illustrated, iGames fails to address binding Third Circuit law. However, even the authority from other jurisdictions upon which iGames relies does not support its argument to exclude Mr. Shopa's testimony in respect to iGames' obligations under the Note and its failure to meet those obligations. For example, iGames' reliance on *Delta Mining Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398 (7th Cir. 1994), *Landmark Builders, Inc. v. Cottages of Anderson, L.P.*, IP 01-C-1592-C-M/S, 2003 WL 21508118 (S.D. Ind. May 20, 2003), and *United States v. Gregory Park, Section II, Inc.*, 373 F.Supp. 317 (D.N.J. 1974) is misplaced. In *Delta Mining*, the court found that the language of the contract was unambiguous, and therefore extrinsic evidence, including expert testimony, would not be admissible to interpret the unambiguous language. *Delta Mining*, 18 F.3d at 1402. In *Landmark Builders*, the court found that because the contract defined the term at issue, expert testimony would not be required for the contract's interpretation. *Landmark Builders*, 2003 WL 21508118, *3 (finding that the term "substantial completion" was defined in the Contract Supplement). Likewise, in *Gregory Park*, the court found that the contract language was "quite clear, requiring no parol evidence to illumine its meaning." *Gregory Park*, 373 F.Supp. at 334.

In contrast to those cases, iGames has strenuously argued that the language of the Note is ambiguous and that iGames' obligations under the Note, and the interest payment due dates are undefined on the Note's face. Thus, iGames itself has defeated its own argument to exclude Mr. Shopa's testimony. If anything, iGames' assertions of undefined ambiguities support the admission of Mr. Shopa's testimony and the denial of iGames' own motion.

Additionally, the specialized knowledge of accountants and financial planners, such as Mr. Shopa, who are familiar with the accounting aspects of interest payment obligations and profit sharing obligations will assist the trier of fact to understand the evidence and to determine the precise factual issue which iGames contends is at the heart of this case, *i.e.*, "the issue of whether, when, and how iGames was obligated to make interest payments under the Note." (C.A. No. 04-CV-180 D.I. 100 at 3 (iGames' Br.).)

Further, iGames arguments go to the weight of Mr. Shopa's testimony and not to its admissibility. This is a case where cross-examination, contrary evidence, and careful instruction on the burden of proof are the appropriate means for iGames to attack Mr. Shopa's opinion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Mr. Shopa's testimony satisfies Federal Rule of Evidence 702's helpfulness standard and also contains "the basis and reasons" for his opinion as required under Federal Rule of Civil Procedure 26(a)(2)(B). Therefore, Mr. Shopa's testimony is admissible and iGames' motion should be denied.

## CONCLUSION

For the foregoing reasons, Chex and Equitex respectfully request that this Court deny iGames' motion in its entirety.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____
James W. Semple (#396)
James E. Drnec (#3789)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800
Email: *jdrnec@morrisjames.com*

Attorneys for Chex Services, Inc. and Equitex, Inc.

OF COUNSEL:

RIDER BENNETT, LLP

Daniel Q. Poretti
Patrick D. Robben
Douglas J. Frederick
33 South Sixth Street, Suite 4900
Minneapolis, MN 55402
(612) 340-8900
*Email: dqporetti@rider.com*

Dated: March 28, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2005 I electronically filed: BRIEF OF CHEX SERVICES, INC. AND EQUITEX, INC. IN OPPOSITION TO iGAMES ENTERTAINMENT, INC.'S MOTION TO PRECLUDE, IN PART, THE TESTIMONY OF DEFENDANTS' PROPOSED EXPERT, THOMAS JOHN SHOPA, with the Clerk using CM/ECF which will send notification of such filing(s) to the following:

> Thomas P. McGonigle, Esquire
> Matt Neiderman, Esquire
> Duane Morris, LLP
> 1100 North Market Street
> 12th Floor
> Wilmington, Delaware 19801

> _____
> James E. Drnec (#3789)
> Morris, James, Hitchens & Williams, LLP
> 222 Delaware Avenue
> P.O. Box 2306
> Wilmington, DE 19899
> (302) 888-6950
> Email: *jdrnec@morrisjames.com*