IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **iGAMES ENTERTAINMENT, INC.**, | : |
| Plaintiff, | : |
| v. | : C.A. No. 04-180-KAJ |
| **CHEX SERVICES, INC.** and **EQUITEX, INC.**, | : JURY TRIAL DEMANDED |
| Defendants. | : |

**iGAMES ENTERTAINMENT, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO PRECLUDE, IN PART, THE TESTIMONY OF DEFENDANTS' PROPOSED EXPERT, THOMAS JOHN SHOPA**

DATED: April 4, 2005

**OF COUNSEL:**
**DUANE MORRIS LLP**
James L. Beausoleil, Jr., Esquire
Matthew A. Taylor, Esquire
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
215.979.1000

**DUANE MORRIS LLP**
Thomas P. McGonigle (Del. I.D. No. 3162)
Matt Neiderman (Del. I.D. No. 4018)
1100 North Market Street, 12th Floor
Wilmington, Delaware  19801
302.657.4900

Attorneys for Plaintiff
iGames Entertainment, Inc.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................1

ARGUMENT .....................................................................................................................................2

I.    MR. SHOPA'S OPINION IS PREMISED ON A FLAWED ASSUMPTION ..................................................................................................................2

II.    MR. SHOPA'S OPINION IS OFFERED FOR AN IMPROPER PURPOSE .........................................................................................................................5

CONCLUSION ..................................................................................................................................7

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                                   **PAGE**

*Buford v. Wilmington Trust Co.*,
841 F.2d 51 (3d Cir. 1988)..................................................................................................5, 6

*Lockhart v. Holiday Homes of St. John, Inc.*,
678 F.2d 1176 (3d Cir. 1982)..................................................................................................3

**STATE CASES**

*Arthur Jordan Piano Co. v. Lewis*,
34 Del. 423 (Del. 1930) .........................................................................................................5

*Hamilton v. Boyce*,
48 N.W.2d 172 (Minn. 1951)..................................................................................................5

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendants Chex and Equitex[1] hope to present the opinion testimony of their accountant, Thomas Shopa, as to the proper interpretation of the parties' Term Loan Note despite the fact that the proposed opinion is (1) premised on a fundamentally flawed and factually unsupported assumption, and (2) is offered for an impermissible purpose. Defendants specifically propose to have Mr. Shopa testify that the Term Loan Note, negotiated between two companies in the ATM and cash management services industry, was intended to be something akin to a commercial "lease," which "calls for a fixed monthly rent" plus a "percentage rent" that is typically based upon sales revenue. Not only is this opinion contrary to the language of the Term Loan Note and contrary to any prior interpretation offered by Defendants' principals or attorneys in this matter, it is an inadmissible attempt to add new terms (favoring Defendants) to a contract which is otherwise silent on the topic.

Defendants fail in their Answering Brief to provide any practical remedy for the defects in Mr. Shopa's proffered opinion, turning instead to cases that, when closely read, are unsupportive of their position. In the end, Defendants' arguments in their Answering Brief make one thing clear. Mr. Shopa's opinion testimony, if permitted, will serve to confuse, rather than clarify, the contract provisions and the issues to be decided by the trier of fact. Defendants' proposed accounting expert should therefore be barred from offering this novel opinion at trial.

---

[1] The defined terms used herein shall have the same meanings ascribed them in iGames' Opening Brief in Support of its Motion to Preclude, in Part, the Testimony of Thomas John Shopa.

1

## ARGUMENT

I.  **MR. SHOPA'S OPINION IS PREMISED ON A FLAWED ASSUMPTION**

Defendants fail in their Answering Brief to cure a number of flawed assumptions upon which Mr. Shopa's "opinion" as to the payment due date under Term Loan Note is based. Mr. Shopa opines, based on standards supposedly prevalent in the commercial lease industry, that a first-of-the-month payment due date can be read into the Term Loan Note. This basic assumption -- that commercial lease industry standards can be used to read terms into the Term Loan Note at issue in this case -- is both factually flawed and legally unfounded.

First, neither Mr. Shopa nor Defendants have offered a reasoned basis in fact for treating the Term Loan Note, which is a specifically-tailored, short-term financing agreement, like a standard commercial lease. This strained analogy ignores both the context and purpose of the Term Loan Note. Defendants and iGames were friendly competitors on the verge of completing a significant transaction by which iGames was to have acquired Chex, and Equitex in turn was to have received a large block of iGames' stock. iGames and Chex previously had been involved in several joint ventures in which they shared vault cash, expenses, office space, personnel and even customer contacts. The Term Loan Note was an interim agreement, designed to allow Equitex to benefit from iGames' acquisition of Available Money while the parties' finalized iGames' acquisition of Chex. *See* Equitex, Inc. January 8, 2004 Press Release ("Equitex, Inc. announced today that its wholly owned subsidiary, Chex Services, Inc. has provided financing assistance for closing on iGames' acquisition of Available Money, Inc. announced today. This financing was provided in the spirit of the pending acquisition of

Chex Services by iGames as previously announced.").[2]  Tellingly, Equitex and Chex wired the first $2,000,000 installment under the Term Loan Note to the sellers of Available Money, Inc. based only on the word of iGames' CEO, Christopher Wolfington, without having any documentation completed or executed.  In short, the Term Loan Note did not even reflect a typical arm's-length commercial financing transaction, let alone a typical transaction between a commercial landlord and tenant.

Perhaps more fundamentally, however, Defendants fail in their Answering Brief to explain how Mr. Shopa's proposed analogy of the Term Loan Note to a commercial lease could be of any assistance to the trier of fact, given that Defendants have offered no evidence that iGames knew or had reason to know of terms common to commercial leases.  As the Third Circuit explained in *Lockhart v. Holiday Homes of St. John, Inc.*, 678 F.2d 1176 (3d Cir. 1982), expert testimony is admissible to establish industry custom and usage with respect to an ambiguous term, only where the contracting parties are familiar with the industry in question.  *Id.* at 1185, n.8 ("Here, Holiday Homes offered no evidence to establish that the owners were familiar with the common usages among real estate agents. Nor could the bare fact that the owners had retained the services of an attorney suffice to support any inference that they understood the contract as Holiday Homes did, or that they were familiar with common usages among realtors.").  In this case, iGames and Defendants are in the business of providing cash access and financial management services to the gaming industry.  Defendants have never argued, nor could they, that either party is in the commercial leasing or commercial real estate business.  As such, Mr. Shopa's proposed testimony relates to customary usage in the wrong industry,

---

[2] A true and correct copy of the January 8 press release is attached hereto as Exhibit "A."

and Defendants have laid no factual foundation whatsoever for a trier of fact to assume that the parties intended the Term Loan Note to be functionally equivalent to a commercial "lease." Taken to its logical conclusion, such testimony, if permitted, would result in the parties presenting evidence to a jury about commercial lease industry standards in a deal and document involving an entirely unrelated industry. Thus, Mr. Shopa's novel opinion, based on a misplaced analogy, will only serve to confuse the trier of fact and should therefore not be admitted at trial.

Finally, Defendants fail to reconcile Mr. Shopa's commercial lease analogy with the plain language of the Term Loan Note. Mr. Shopa's commercial lease analogy is based on his belief that the Term Loan Note contains something akin to a "rent plus profits" provision, or, in other words, that the Term Loan Note provides for the payment of interest plus a portion of Available Money's profits. (Defendants' Answering Brief, at p. 4) (stating that Mr. Shopa "immediately recognized the Term Loan Note as being akin to a commercial lease). This is not the case. The Term Loan Note specifically provides that "in lieu of interest" iGames can pay Chex "an amount equal to 50% of the Operating Income of the Borrower's Available Money, Inc. subsidiary." None of the parties to the Term Loan Note have ever argued that iGames was obligated to pay interest plus 50% of the Operating Income of Available Money on a monthly basis. Rather, Defendants have themselves described the Term Loan Note as providing them only with a portion of Available Money's profits, and nothing more. *See* Equitex, Inc. January 8, 2004 Press Release ("The terms of the financing will provide Chex Services, Inc. with a 50% participation in Available Money's revenues and income for not less than 90 days subject to certain extensions, and a 50% participation in Available Money's income until the

financing is repaid."). In sum, the effect of Mr. Shopa's analogy is to reach across unrelated industries to interject language into the Term Loan Note that neither Defendants nor their lawyers have never previously espoused. This goes far beyond the proper role of expert testimony, especially as it relates to clarifying the proper construction of a contract.

## II.     MR. SHOPA'S OPINION IS OFFERED FOR AN IMPROPER PURPOSE

Setting aside the flaws underlying the assumptions relied on by Mr. Shopa in reaching his opinion, that opinion (even if valid) is offered for an improper purpose. That is, Defendants offer Mr. Shopa's opinion to inject a specific due date into a contract which is otherwise silent on the subject. It is a longstanding tenet of Delaware law that parol evidence, such as expert testimony as to common industry usages, cannot be admitted to contradict the terms of or rewrite the parties' agreement, even where the agreement is silent as to the topic on which parol evidence is sought to be introduced. *See Arthur Jordan Piano Co. v. Lewis*, 34 Del. 423 (Del. 1930) ("If [the contract] imports on its face to be a complete expression of the whole agreement . . . parol evidence cannot be admitted to add another term, although the writing is silent as to the particular one to which the parol evidence is directed.").[3] Because the Term Loan Note is an integrated and complete instrument, but provides no specific payment due date, Mr. Shopa's opinion, if permitted, would add a new term, thus varying the bargain struck by the parties, and his opinion is therefore inadmissible.

---

[3] Minnesota law is identical on this point. *See Hamilton v. Boyce*, 48 N.W.2d 172, 173-74 (Minn. 1951) ("In determining whether parol evidence is admissible, a distinction is drawn between evidence tending to show that no contract has ever been made and evidence to contradict**,** vary, or add to the terms of a written contract.").

5

The cases cited by Defendants in their Answering Brief do nothing to support the use of Mr. Shopa's opinion as proffered, but instead stand for the unremarkable proposition that where a specific term in a contract is ambiguous, a court may admit expert testimony to assist the trier of fact in defining the ambiguous term. For instance, the Third Circuit's decision in *Buford v. Wilmington Trust Co.*, 841 F.2d 51 (3d Cir. 1988), which the defendants appear to rely on but never actually discuss, actually demonstrates why Shopa's opinion is inadmissible. In *Buford*, the Third Circuit held that the trial court did not abuse its discretion by admitting expert testimony to explain the meaning of an express but undefined term used by the parties in their contract. *Id*. at 55. Here, however, Mr. Shopa does not purport to explain the meaning of any express term used by the parties to the Term Loan Note. Rather, seizing upon the fact that the Term Loan Note does not specify a specific date for iGames to make its first payment, Shopa proposes, under the guise of his "expertise," to read into the contract words and requirements that the parties did not include. In other words, Shopa's proffered testimony would impose an obligation on iGames that is nowhere to be found in the contract -- *i.e.*, that iGames was obligated prior to March 12, 2004 to pay interest to Defendants and to thereafter pay interest plus 50% of the Operating Income of Available Money. Simply put, the Third Circuit's holding in *Buford* simply cannot be read to support such testimony, and Defendants fail to offer any other authority to support their improper use of parol evidence.

## **CONCLUSION**

For all of the foregoing reasons, iGames Entertainment, Inc. respectfully requests that the Court preclude Defendants' proffered expert witness, Thomas John Shopa, from testifying that iGames was in default of its obligations under the Note on March 12, 2004, as set forth in the second "conclusion" in Mr. Shopa's report dated January 26, 2005.

DATED:    April 4, 2005        **DUANE MORRIS LLP**


                                /s/ Thomas P. McGonigle
                                Thomas P. McGonigle (Del. I.D. No. 3162)
                                Matt Neiderman (Del. I.D. No. 4018)
                                1100 North Market Street, 12th Floor
**OF COUNSEL:**                 Wilmington, Delaware  19801
**DUANE MORRIS LLP**            302.657.4900
James L. Beausoleil, Jr., Esquire
Matthew A. Taylor, Esquire      Attorneys for Plaintiff
One Liberty Place               iGames Entertainment, Inc.
Philadelphia, Pennsylvania 19103-7396
215.979.1000


WLM\207096.1

7