THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| iGames Entertainment, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>Chex Services, Inc. and Equitex, Inc.,<br><br>Defendants. | C.A. No. 04-180-KAJ |

**REPLY BRIEF IN SUPPORT OF
CHEX SERVICES, INC.'S AND EQUITEX, INC.'S
<u>MOTION TO EXCLUDE EXPERT TESTIMONY</u>**

                                      MORRIS, JAMES, HITCHENS & WILLIAMS LLP

                                      James W. Semple (#396)
                                      James E. Drnec (#3789)
                                      222 Delaware Avenue
                                      P.O. Box 2306
                                      Wilmington, DE 19899
                                      (302) 888-6800
                                      Email: *jdrnec@morrisjames.com*
                                      Attorneys for Chex Services, Inc.
OF COUNSEL:                     and Equitex, Inc.

RIDER BENNETT, LLP

Daniel Q. Poretti
Patrick D. Robben
Douglas J. Frederick
33 South Sixth Street, Suite 4900
Minneapolis, MN 55402
(612) 340-8900
Email: *dqporetti@rider.com*

Dated:  April 5, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

SUMMARY OF REPLY ARGUMENT ........................................................................ 1

ARGUMENT .................................................................................................................. 2

    I.    IGAMES FAILS TO MEET ITS BURDEN IN PROVING THAT ANY PORTION OF ROTH'S INITIAL REPORT IS ADMISSIBLE .................................................................................................. 2

        A.    Roth's Opinion Regarding Prejudgment Interest ................................. 2

        B.    Roth's Opinion Regarding "Costs and Expenses" ............................... 2

        C.    Roth's Opinion Regarding "Costs of Funds" ...................................... 3

        D.    Roth's Opinion Regarding the Additional Costs to Convert Available Money ATM Machines .......................................... 5

        E.    Roth's Opinion Regarding the Credit Facility Loan ............................ 6

        F.    Roth's Opinion Regarding Projected Loss Income ............................. 6

        G.    iGames Fails to Meet its Burden of Proving that Roth's Rebuttal Report Regarding the "Note Receivable – Howards" is Admissible ..................................................................... 8

    II.    IGAMES FAILS TO MEET ITS BURDEN OF PROVING THAT ANY PORTION OF MILLER'S REBUTTAL REPORT IS ADMISSIBLE ................................................................................................. 9

CONCLUSION ............................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chemipal, Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
    350 F. Supp. 2d 582 (D. Del. 2004).................................................................2, 3, 5

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
    347 F. Supp. 2d 114 (D. Del. 2004 .................................................................3, 5, 9

*Re v. Gannett Co., Inc.*,
    480 A.2d 662 (Del. Super. 1984).................................................................................7

**Statutes**

Fed. R. Civ. P. 59..................................................................................................................2

Federal Rules of Evidence Rule 702..................................................................................9

## SUMMARY OF REPLY ARGUMENT

iGames Entertainment, Inc. ("iGames") has submitted a brief in opposition to Chex Services, Inc.'s ("Chex") and Equitex, Inc.'s ("Equitex") well-reasoned motion to exclude the testimony of iGames' designated experts. (*See* C.A. No. 04-180 D.I. 115 (iGames' Br. in Opp'n).) iGames' opposition brief simply fails to engage Chex and Equitex's main arguments that the testimony and reports of iGames' experts are inappropriately conclusory and speculative and that they fail to set forth the linking analysis required to be able to assist the trier of fact in any meaningful manner. As such, iGames fails to meet its burden of proving that its expert's testimony is admissible. Thus, Chex and Equitex's motion to exclude the testimony of iGames' experts should be granted in its entirety.

## **ARGUMENT**

Initially, iGames apparently neglects to understand the fundamental aspect that "[t]he party offering the expert testimony has the burden of proving admissibility." *Chemipal, Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 588 (D. Del. 2004). As illustrated herein, iGames has failed to meet its evidentiary burden.

**I.    iGames Fails to Meet its Burden in Proving That Any Portion of Roth's Initial Report is Admissible**

**A.    Roth's Opinion Regarding Prejudgment Interest**

Interestingly, iGames has conceded that Roth cannot offer an opinion as to whether iGames is entitled to the Termination Fee, but iGames argues that Roth can offer his opinion as to a calculation for prejudgment interest regarding the Termination Fee. (*See* C.A. No. 04-180 D.I. 115 at 2-3.) However, iGames admits that Roth's Report is inconsistent with the law, and that "the Court may properly assess this issue in post-judgment proceedings pursuant to Fed. R. Civ. P. 59." (*Id.*) Thus, iGames has utterly failed to establish how Roth's opinion will assist the trier of fact. As such, Roth's opinion should be excluded.

**B.    Roth's Opinion Regarding "Costs and Expenses"**

Here again, iGames has conceded that Roth cannot offer an opinion as to whether iGames is entitled to its "Costs and Expenses," but iGames argues that Roth can offer his opinion as to a calculation of "Costs and Expenses." (*See id.* at 3-4.) Not only does iGames concede that it never provided the written notice of its "costs and expenses" as specifically required under the SPA, but iGames also, once again in a conclusory manner, merely asserts that the "fact that the SPA was terminated in March 2004 is no grounds for preventing Roth from including in his 'costs and expenses' calculation legal fees billed through December 2004. All of the fees iGames incurred were payable to the law firm of Klehr, Harrison, Harvey, Branzburg & Ellers LLP,

2

which represented iGames in connection with the SPA, and are payable in connection with the SPA." (*Id.* at 4.)

iGames' conclusory statements shed no light on how such fees were "incurred in connection with the preparation, negotiation, execution and performance of the [SPA]" as required under the SPA. Thus, iGames has wholly failed to demonstrate that Roth's opinion provides a valid connection to the pertinent inquiry and the appropriate linking analysis required for the admission of expert testimony. *See Chemipal*, 350 F. Supp. 2d at 588; *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 114, 120 (D. Del. 2004). As such, Roth's opinion should be excluded.

### C.   Roth's Opinion Regarding "Costs of Funds"

iGames argues that Roth purports to calculate damages from Chex's alleged failure to provide the second advance of an additional $2 million under the Term Loan Note by calculating the "Costs of Funds to Purchase Available Money." iGames and Mr. Roth, however, simply ignore the testimony of iGames' Chief Executive Officer, Mr. Chris Wolfington, regarding his understanding of the Note. Mr. Wolfington testified:

> Q. And the lender is Chex, right?
>
> A. Yes.
>
> Q. Okay. The term loan note second paragraph reads, "The borrower and the lender agree that the lender shall advance two million to the borrower on the date hereof and shall advance an additional two million to the borrower on that date, that is, 60 days following the date hereof provided that at such time the borrower is in material compliance with the terms of this note, stock pledge agreement as defined below and the stock purchase agreement as defined below." Do you see where I was reading?
>
> A. Yes.
>
> Q. When you signed this agreement with that language, isn't it true that you understood that if you had not provided the stock pledge agreement, as called

3

>    for in this note that the second $2 million would not be forthcoming from Chex?
>
> A. If by March 6th that was the case, that's how I understand that. It says on that day, that is, 60 days following the date hereof provided that. So by that 60th day I would have had to have been in compliance with those things that you're saying, which would have been March 6th.

(Robben Aff.[1] Ex. 5 at 240-41 (Wolfington Dep. at 240-41).) As more fully explained in Chex's opening and reply briefs in support of its pending motion for summary judgment on the Note, it is undisputed that iGames never delivered an executed Stock Pledge Agreement or the required Corporate Guaranties on or before March 6, 2004, and did not deliver the documents on March 7, March 8, March 9, March 10, March 11, March 12, or any time thereafter. Thus, according to Mr. Wolfington's own understanding of the Note, iGames was not in material compliance with the terms of the Note as of March 6, 2004, and therefore <u>Chex was under no obligation</u> to advance the second $2 million. (*See id.*)

Mr. Wolfington's admission in this respect precludes any damages allegedly flowing from the fact that Chex did not make the second advance of an additional $2 million.[2] Chex was never required to do so. As such, Mr. Roth's testimony cannot assist the trier of fact and should be excluded.

Further, in attempting to rebut the compelling arguments made by Chex and Equitex in their opening brief to exclude expert testimony, iGames suggests that Defendants have a fundamental misunderstanding of the nature of the SPA, and states that "[a]s Roth notes in his

---

[1] References to the "Robben Aff." refer to the Affidavit of Patrick D. Robben in Support of Equitex, Inc.'s and Chex Services, Inc.'s Motion for Summary Judgment previously submitted in this matter. (C.A. No. 04-CV-180 D.I. 88 and 89.)

[2] Also, as more fully explained in Chex's opening and reply briefs in support of its motion for summary judgment on the Note, the Note expressly provides that if Chex failed to obtain proof of adequate financing within 21 days, iGames would have the "right" to prepay the principal balance and all accrued interest to the date of prepayment, and then iGames' obligations regarding paying the 50% of Available Money's Operating Income in addition to the interest payments would cease. (*See* Robben Aff. Ex. 7 at 1.) Simply because iGames refused to exercise its contractual "right" to prepay the Note, does not mean that Chex breached the agreement, and does not mean that iGames is no longer bound by the provisions of the Note.

Report, but for the breach, the transaction under the SPA should have closed on March 15, 2004" and thus the payments under the Note would have been paid "by iGames to itself." (C.A. No. 04-180 D.I. 115 at 6.) iGames and Mr. Roth offer no support for the proposition that the SPA would have closed on March 15, 2004. Indeed, the parties were actively working on a revised merger agreement to replace the SPA and Mr. Wolfington's own testimony reveals that iGames would *not* have closed on the SPA as written. (*See* Robben Aff. Ex. 5 (Sept. 22 Wolfington Dep. p. 213, lns. 22-24; p. 214, lns. 1-15). Thus, Roth's opinion is purely speculative and iGames has failed to prove that it can assist the trier of fact. As such, Mr. Roth's opinion should be excluded.

    **D.    Roth's Opinion Regarding the Additional Costs to Convert Available Money ATM Machines**

Once again, iGames offers nothing but conclusory statements that these additional costs were in any way connected to Chex and Equitex's alleged breaches of the SPA. Thus, iGames has wholly failed to demonstrate that Roth's opinion provides a valid connection to the pertinent inquiry and the appropriate linking analysis required for the admission of expert testimony. *See Chemipal*, 350 F. Supp. 2d at 588; *Honeywell*, 347 F. Supp. 2d at 120. As such, Roth's opinion should be excluded.

Also, iGames boldly asserts that Roth can accept from Mr. Wolfington unverified estimates, upon which to base Roth's entire analysis, because Mr. Wolfington provided "the best estimate available" and Defendants can challenge Roth's methodology during cross-examination. (*See* C.A. No. 04-180 D.I. 115 at 8.) Thus, iGames simply refuses to accept its burden of proving that Roth's opinion is reliable and will assist the trier of fact. iGames has failed to meet its burden and Mr. Roth's opinion should be excluded.

### E. Roth's Opinion Regarding the Credit Facility Loan

Even though Roth set forth his analysis of iGames' alleged "costs and expenses" damages in an entirely separate portion of his Report, and even though Roth never included anything related to the Credit Facility Loan on his Exhibit 3 to his Report, which purportedly "detailed" iGames' "costs and expenses," iGames now asserts that the Credit Facility Loan is included in iGames allegedly recoverable "costs and expenses" under the SPA. (*See id*.) Once again, iGames utterly fails to provide the appropriate linking analysis required to prove that the loan had any connection to the SPA, let alone that it was solely attributable to the SPA. In fact, iGames' brief in opposition to Chex and Equitex's motion for summary judgment, indicates that iGames took out this loan because it had "no income and was losing money", and because it needed money to complete its merger with Money Centers of America, Inc. and to comply with its filing obligations with the SEC as well as to comply with its responsibilities under the SPA. (*See* C.A. No. 04-180 D.I. 113 at 28.) However, now iGames argues that Roth's Report correctly treats the entire Credit Facility Loan as though it was solely used in connection with "the preparation, negotiation, execution and performance of the [SPA]" as required to be included in the "costs and expenses" recoverable under section 11(e)(ii) of the SPA. (*See* C.A. No. 04-180 D.I. 115 at 8-9.) Further, iGames attempts to shift the burden to Defendants to prove the extent to which the Credit Facility Loan was not utilized in connection with the SPA. (*See id*. at 9.) The fact is that Roth provided mere conclusory statements without any supporting documentation or linking analysis as required to in order to assist the trier of fact. As such, Mr. Roth's opinion should be excluded.

### F. Roth's Opinion Regarding Projected Loss Income

In iGames' brief in support of its pending motion for summary judgment, iGames states, "the November 3, 2003 SPA represented the second attempt by iGames to acquire Chex." (C.A.

6

No. 04-180 D.I. 98 at 4.) Thus, iGames' own statement suggests that completion of such transactions is inherently uncertain. However, iGames now ignores this uncertainty. Ignoring the fact that iGames itself had threatened to terminate the SPA on previous occasions, ignoring the fact that parties were actively working on a revised merger agreement to replace the SPA, ignoring the fact that Mr. Wolfington's own testimony reveals that iGames would *not* have closed on the SPA as written, (*See* Robben Aff. Ex. 5 (Sept. 22 Wolfington Dep. p. 213, lns. 22-24; p. 214, lns. 1-15), and ignoring the fact that iGames argues that *it* terminated the SPA on March 12, 2004, iGames now argues that Roth's opinion regarding the "projected loss of income" for iGames following the uncertain closing of the SPA is not speculative. iGames and Mr. Roth offer no support for the proposition that the SPA would have closed on March 15, 2004 or at anytime thereafter. Thus, Roth's opinion is purely speculative and iGames has failed to prove that it can assist the trier of fact. As such, Mr. Roth's opinion should be excluded.

Furthermore,

> Courts have required that loss of future profits be established by substantial evidence and not be left to speculation. 25A C.J.S. *Damages* § 162(2), pp. 79-81, § 162(4), pp. 82-6, 22 Am.Jurs.2d *Damages* § 172, pp. 242-5. *Cf. Pan American World Airways v. United Aircraft Corp.*, Del.Supr., 192 A.2d 913 (1963). This requirement has given rise to a concept that *as a general rule, evidence of expected profits from a new business is too speculative, uncertain and remote to be considered where there is no history of prior profits.* 22 Am.Jur.2d *Damages* § 173, p. 245.

*Re v. Gannett Co., Inc.*, 480 A.2d 662, 668 (Del. Super. 1984) (emphasis added). iGames simply ignores the fact that the proposed iGames/Chex combined entity had no prior history of profits or income upon which to base any expert opinion and is too speculative as a matter of law.

Additionally, iGames fails to demonstrate how Roth's acceptance of Mr. Wolfington's unverified and unsubstantiated "iGames/Equitex Transaction Analysis" is appropriate. Further,

7

iGames fails to demonstrate how the "iGames/Equitex Transaction Analysis", which was produced by Mr. Wolfington in March 2004 as a means of proposing a "new" revised merger agreement with Equitex, is even relevant to the SPA which dealt with a wholly different transaction wherein iGames would acquire Chex rather than merge with another entity. iGames has failed to meet its burden in proving that Roth's opinion regarding projected loss of income is relevant or reliable, let alone that it will assist the trier of fact in any meaningful way. As such, Mr. Roth's opinion should be excluded.

### G.    iGames Fails to Meet its Burden of Proving that Roth's Rebuttal Report Regarding the "Note Receivable – Howards" is Admissible

Importantly, iGames essentially admits that Roth's purported "rebuttal" opinion does not even attempt to rebut Mr. Shopa's expert testimony that Chex and Equitex consistently applied generally accepted accounting principles (GAAP). (C.A. No. 04-180 D.I. 115 at 11-12.) Instead, iGames admits that Roth has offered "rebuttal" testimony on wholly other issues, stating that "Roth will testify that Equitex's cashing these bad checks was a material adverse change." (*Id.* at 11.)

If iGames sought to have Roth testify about the Howard note as having a material adverse change on Chex or Equitex, Roth was required to include that opinion in his initial report. Roth's inclusion of this new opinion in a "rebuttal" report is simply a belated attempt to submit additional expert testimony on behalf of iGames. Thus, the "Note Receivable – Howards" portion of Roth's "rebuttal" report and his opinion related thereto should be excluded. *Cf. Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004) (indicating that belated attempts to submit additional expert testimony does not satisfy Rule 26(a)(2)(B)).

## II. iGames Fails to Meet its Burden of Proving That Any Portion of Miller's Rebuttal Report is Admissible

Once again, in respect to Mr. Miller's Rebuttal Report, iGames simply suggests that its expert's conclusory statements do not need to be supported. However, unsupported conclusory statements fail to meet the requirements of Federal Rules of Evidence Rule 702. *See Honeywell*, 347 F. Supp. 2d at 119. Thus, iGames has wholly failed to demonstrate that Miller's Rebuttal Report and testimony is admissible. As such, Miller's testimony should be excluded in its entirety.

## CONCLUSION

For the foregoing reasons, Chex and Equitex respectfully request that their motion to exclude expert testimony be granted in its entirety.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____
James W. Semple (#396)
James E. Drnec (#3789)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800
Email: *jdrnec@morrisjames.com*
Attorneys for Chex Services, Inc. and Equitex, Inc.

OF COUNSEL:

RIDER BENNETT, LLP

Daniel Q. Poretti
Patrick D. Robben
Douglas J. Frederick
33 South Sixth Street, Suite 4900
Minneapolis, MN 55402
(612) 340-8900
Email: *dqporetti@rider.com*

Dated: April 5, 2005

## CERTIFICATE OF SERVICE

I, JAMES E. DRNEC, hereby certify that on April 5, 2005 I electronically filed:

REPLY BRIEF IN SUPPORT OF CHEX SERVICES, INC.'S AND EQUITEX, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY, with the Clerk using CM/ECF which will send notification of such filing(s) to the following:

Thomas P. McGonigle, Esquire
Matt Neiderman, Esquire
Duane Morris, LLP
1100 North Market Street
12th Floor
Wilmington, Delaware 19801

James E. Drnec (#3789)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6950
Email: *jdrnec@morrisjames.com*