IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| iGAMES ENTERTAINMENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-180-KAJ |
| | ) (Consolidated) |
| CHEX SERVICES, INC., and EQUITEX, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Introduction

This is a commercial dispute involving, among other things, allegations of breach of contract. Presently before me is a *Daubert* motion[1] (Docket Item ["D.I."] 99) filed by the plaintiff, iGames Entertainment, Inc. ("iGames"), seeking to preclude a portion of the proposed testimony of defendants' accounting expert, John Thomas Shopa. For the reasons that follow, iGames' motion is granted.

Background[2]

Plaintiff iGames is a holding company that, through its subsidiaries Money Centers of America and Available Money, provides "cash access and financial

---

[1]Motions to preclude testimony or evidence being offered by a party pursuant to Federal Rule of Evidence 702, through a witness who claims specialized knowledge or expertise, are commonly called *Daubert* motions, the reference being to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2]The following background information is cast in the light most favorable to the non-moving parties and does not constitute findings of fact.

management systems for the gaming industry[.]" (D.I. 100 at Ex. C, pg 2.)[3] Defendant Equitex, Inc. ("Equitex") is a holding company that, during the events at issue, owned defendant Chex Services, Inc. ("Chex"), which was in the business of providing "comprehensive cash access services to casinos and gaming establishments." (*Id.*) In short, the parties are in the business of seeing that gamblers who want access to their own cash can get at it quickly, for a fee.

On November 3, 2003, iGames and the defendants entered into a stock purchase agreement (the "SPA"), pursuant to which iGames was to acquire all of the issued and outstanding stock of Chex. (*Id.* at Ex. C, pg 4.) As part of the planned acquisition, Chex and iGames entered into a Term Loan Note dated January 6, 2004 (the "Note"), which provided, *inter alia*, that Chex would lend money to iGames and that, "[f]or the period ending February 1, 2004, the Borrower [iGames] shall pay to the Lender [Chex] interest on the outstanding Term Loans at the rate of fifteen percent (15%) per annum, calculated on the basis of a 360-day year and counting the actual number of days elapsed." (*See id.* at Ex. C., pgs 4, 5.) For reasons not pertinent to the present motion, the planned transaction collapsed into the acrimony that has produced this litigation, with a primary point of contention being whether iGames breached its obligations under the Note. (*See, e.g.,* D.I. 100 at 2-5; D.I. 108 at 2-6.)

Chex and Equitex have retained the services of Mr. Shopa, a certified public accountant, and have disclosed a report that he prepared in which, based upon the language from the Note quoted above, he opines that iGames' "obligations to pay

---

[3]The referenced Docket Item is the January 26, 2005 Expert Report of Thomas John Shopa, CPA, CFP.

interest to Chex Services on the Term Loan Note were clearly outlined in the agreement ... ." (D.I. 100 at Ex. C, pg 5.) Quoting another portion of the Note,[4] Mr. Shopa asserts that the Note was "similar in nature to a lease, which calls for a fixed monthly rent payment and the payment of additional 'percentage rent' typically based upon sales revenue." (*Id.*) He concludes that, "[i]n such instances, the monthly rent is payable on the first day of the month with payment of the additional 'percentage rent' due as soon as the information to calculate the percentage rent becomes available." (*Id.*) Mr. Shopa then opines, in essence, that iGames defaulted on its obligations, as he has described them (*id.* at 6), and that iGames' legal positions with respect to its obligations under the Note are "not reasonable" (*id.* at 8-9).

iGames' Motion asks that I "preclude Mr. Shopa from testifying as to his interpretation of the legal effect of the terms of a Term Loan Note between the parties" and that I bar him "from offering an opinion that iGames was in default of its alleged obligation under the parties' Term Loan Note ... ." (D.I. 99.)

Standard

Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard)

---

[4]The quoted language is, "[i]n addition, in lieu of interest, the Borrower shall, on a monthly basis, pay to the Lender an amount equal to 50% of the Operating Income of the Borrower's Available Money, Inc. subsidiary (which for the period ending February 1, 2004 shall be reduced by the amount of interest paid under the previous sentence." (D.I. 100 at Ex. C, pg 5.)

3

(internal citations omitted).[5]

Discussion

Federal Rule of Evidence 702 states that,

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In applying this rule, trial judges are required to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. That responsibility has come to be known as "gatekeeping." *See id.* at 589 n.7. In screening a proffered expert opinion, one aspect of relevance that must be examined is "fit," i.e., whether the opinion is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985).

In this case, iGames rightly denies that Mr. Shopa's opinion sufficiently fits the facts. Mr. Shopa's report declares that the payment arrangements called for by the Note are "similar in nature to a lease." (D.I. 100 at Ex. C, pg 5.) That assertion is made

---

[5] However, "'when the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment,' the Court of Appeals will give those rulings 'a "hard look" to determine if a district court has abused its discretion in excluding evidence as unreliable.'" *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l., Inc.*, 350 F. Supp. 2d 582, 587 (D. Del. 2004) (quoting *Paoli R.R. Yard*, 35 F.3d at 750).

4

without any supporting analysis.[6] Mr. Shopa does observe that in leases, "the monthly rent is payable on the first day of the month with payment of the additional 'percentage rent' due as soon as the information to calculate the percentage rent becomes available." (*Id.*) But there is no effort by Mr. Shopa to explain how a note involving a loan incident to the acquisition of a fee-for-cash business is sufficiently like a commercial real estate lease to warrant his importing concepts from such leases into this case. Whatever similarity Mr. Shopa perceives is not self-evident. Thus, the defendants have failed to demonstrate that Mr. Shopa's opinion on this point fits the facts of this case.

That conclusion is more plain when one considers that, despite there being an extensive discovery record in this matter (*see* 4/21/05 Transcript of Oral Argument at 5 - 11 (defendants' counsel describing evidence developed in discovery)), the defendants point to nothing in the record to support the "this is like a lease" opinion that Mr. Shopa proposes to offer.

More fundamentally, the defendants have failed to lay a critical predicate for putting forward an expert to opine on the meaning of terms in the Note: evidence that the terms were given a specialized meaning requiring expert aid to understand. The relevant inquiry in a contract dispute is what the parties meant by the language they chose. An expert giving his view of what contract language means, without linking it to

---

[6]Also given without explanation or analytical support is the remarkable assertion that the payment obligations are "clearly outlined in the agreement[.]" (D.I. 100 at Ex. C, pg 5.) On the contrary, the only reason Mr. Shopa's opinion on the repayment terms is being offered at all is because those obligations are anything but clear. If the parties had bothered to mention when interest payments were due, a common term in loan documents, we would not be having this discussion.

what the parties understood, is not giving relevant evidence. See *Holiday Homes of St. John, Inc. v. Lockhart*, 678 F.2d 1176, 1185 (3d Cir. 1982) (testimony of expert witnesses was not relevant to the question of what the parties intended to agree to by signing contract); *United States v. Gregory Park Section II, Inc.*, 373 F. Supp. 317, 333 (D.N.J. 1974) (expert testimony proffered to explain meaning of words in a contract was barred because, "defendant did not establish that these words, as used by the parties, were given a specialized usage requiring expert aid to determine their meaning ... ."); *cf. Buford v. Wilmington Trust Co.*, 841 F.2d 51, 55 (3d Cir. 1988) (citing expert testimony permitted at trial regarding "commonly ... understood" meaning of words in a contract, when the opinion was "consistent with the apparent ... undertaking" set forth in a specific term of the contract). Mr. Shopa's opinion about the meaning of the payment terms, and his associated conclusion that iGames was in default under those terms, is therefore impermissible in this case.

Conclusion

    Accordingly, it is hereby ORDERED that iGames' *Daubert* motion (D.I. 99) seeking to prevent the defendants' expert, Thomas John Shopa, from testifying to his interpretation of the payment terms in the Note and further testifying that iGames is or was in default under those terms is GRANTED.

*[signature]*
UNITED STATES DISTRICT JUDGE

June 9, 2005
Wilmington, Delaware